IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DJ MANUFACTURING CORPORATION

Plaintiff

v.

TEX-SHIELD, INC., BLUCHER
GMBH, BLUCHER USA, and
CREATIVE APPAREL.

Defendants.

Civil No.   97-1457 (JAG)

Antitrust

DJ MANUFACTURING CORPORATION

Plaintiff

v.

BLUCHER GMBH, BLUCHER USA, and
CREATIVE APPAREL.

Defendants.

Civil No. 98-2065 (JAG)

Antitrust

## OPINION AND ORDER

Plaintiff DJ Manufacturing Corporation ("DJM"), a corporation

organized under the laws of the Commonwealth of Puerto Rico,

brought suit against Blucher GmbH ("Blucher"), a German Corporation

with headquarters located in Erkrath, Germany, its wholly owned

subsidiaries Tex-Shield ("Tex-Shield") and Blucher USA ("Blucher

USA"), both Delaware corporations with offices and principal place

of business in New Jersey, and Creative Apparel Associates

("Creative"), a foreign corporation with offices and principal



place of business in Maine.  DJM brought this action pursuant to the provisions of 15 U.S.C. §§ 15 and 26 to recover damages for defendants' alleged violations of the antitrust laws of the United States, specifically sections 1 and 2 of the Sherman Act, sections 2(a) and 2(f) of the Clayton Act as amended by the Robinson-Patman Act ("Robinson-Patman Act").  DJM also sets forth state law claims under 10 L.P.R.A. §§ 258, 263, 264 ("Puerto Rico Antimonopoly Act").

Pending before the Court are defendants' Tex-Shield's and Blucher's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dockets. No. 77 and 96 respectively) and Plaintiff's Motion for Entry of Partial Summary Judgment (Docket No. 104, 108 and 115, respectively).  For the reasons stated below  defendants' Tex-Shield's and Blucher's Motion to Dismiss are **GRANTED**.  DJM's Motion for Entry of Partial Summary Judgment is **MOOT**.

### FACTUAL BACKGROUND

DJM is a corporation that manufactures complex sewn clothing and equipage for the United States military agencies.  It is a small disadvantaged business as that term is used in regulations governing federal contracts[1], and it is a certified participant in

---

[1] See 48 C.F.R. 19.001

the Small Business Administration's ("SBA") 8(a) program for contracts set aside to small disadvantaged businesses, including contracts with United States military agencies and departments[2].

Defendant Tex-Shield manufactures and holds a patent for certain technology used to produce a chemical protective material known as "Saratoga Filter Cloth" that is sewn into chemical protective garments purchased by agencies and departments of the United States Military.

In July 1993 the United States Air Force ("USAF") issued a solicitation for bids for the sale of 40,000 Chemical Defense Coveralls. The procurement was limited to businesses participating in the SBA's 8(a) program, such as DJM. The USAF specified that the coveralls must be manufactured using Saratoga Filter Cloth. Tex-Shield was identified as the sole approved source for the Cloth. DJM was awarded the contract for the Air Force solicitation for 40,000 coveralls at a unit price of $376.15 for a total contract price of $15,006,000.

After DJM was awarded the USAF contract, DJM and Tex-Shield entered into a subcontract which provided that DJM would buy the

---

2

See § 8(a) of the Small Business Act, 15 U.S.C. § 637(a) ("8(a) program").

Saratoga Filter Cloth from Tex-Shield at a price of $49.27 per yard.  Subsequently, DJM and Tex-Shield entered into a "technical services" contract whereby Tex-Shield agreed to provide DJM with certain technical services for a fee of $35,000 per month for a twelve (12) month period.

On June 24, 1994, the Defense Personnel Support Center ("DPSC") issued a solicitation for proposals for the sale of a minimum of 100,000 chemical and biological suits and an additional quantity at the option of the DPSC.  Just like the Air Force Solicitation, the DPSC Solicitation was limited to SBA's 8(a) program participants.  The solicitation also required that the suits be manufactured from the Saratoga Filter Cloth produced with the Blucher Technology; again Tex-Shield was identified as the sole approved source for the cloth.

Pursuant to the DPSC solicitation, Tex-Shield quoted DJM a price of $38.71 per yard for the first 100,000 suits, and $41.07 per yard for any additional quantity.  Tex-Shield also sent DJM a quote to sell the Saratoga Cloth in the form of pre-cut "kits" at $148.95 for the first 100,000 suits and $154.43 for any additional quantity.  In light of these numbers, DJM offered DPSC a price of $186.62 per unit for the first 100,000 suits and $183.50 for any additional quantity.  This time, however, DJM was not awarded the

4

DPSC contract; instead the DPSC selected Creative.    Creative submitted a bid of $179.55 for the first 100,000 suits and $186.02 for any additional quantity[3].

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.    It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."    See Ports Authority of P.R. v. Copañía Panameña de Aviación, 77 F.Supp.2d 227, 228 (D.P.R. 1999); citing Conley v. Gibson, 355 U.S. 41, 46-46, (1957); and Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991).

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "all well-pleaded facts are taken as true, and … all reasonable inferences are drawn in favor of the nonmovant." Gutierrez-Usera v. Puerto Rico Telephone Co., 967 F.Supp. 35, 37

---

[3]
In its Amended Complaint, DJM does not specify the price Tex-Shield quoted to Creative.    DJM simply avers that Tex-Shield offered Creative, "Blucher Protective Cloth at a significantly lower price than the price quoted and offered to DJM... ."

(D.P.R.1997).  A complaint must set forth "factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." See Ports Authority, 77 F.Supp.2d at 229; citing Romero-Barceló v. Hernández Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996). The Court, however, need not accept a complaint's "bald assertions or legal conclusions" when assessing a motion to dismiss.  Id., quoting Abbott III v. United States, 144 F.3d 1, 2 (1st Cir. 1998), (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

Whether DJM will ultimately have enough evidence to withstand summary judgment and persuade a jury as to the validity of its claims remains to be seen. The question here, however, is whether it has alleged enough to survive the motions to dismiss.  The Court of Appeals for the First Circuit has repeatedly cautioned that Rule 12 (b) (6) is not entirely a toothless tiger. "Minimal requirements are not tantamount to nonexistent requirements. The threshold [for stating a claim] may be low, but it is real . . ." Thus, plaintiffs are obliged to set forth in their complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989), citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st

Cir. 1988). In the antitrust context, a complaint containing vague pleadings lacking the requisite factual allegations of an antitrust claim is insufficient to state a cause of action. <u>Gilbuilt Homes, Inc. v. Continental Homes of New England</u>, 667 F.2d 209 (1st Cir. 1981).

## PLAINTIFF'S ANTITRUST CLAIMS AS SET FORTH IN THE AMENDED
## COMPLAINT

Plaintiff claims in its Amended Complaint that the Blucher defendants and Tex-Shield have unlawfully retrained trade or commerce under Section 1 of the Sherman Act[4]. Plaintiff also claims that, having acquired monopoly power in the relevant line of commerce, have unlawfully exercised such monopoly power in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2 .[5]

Plaintiff further maintains that by offering to sell and selling Saratoga Filter Cloth at higher prices to DJM in Puerto Rico than the prices offered and charged to Creative in Maine for

---

[4]    Section 1 of the Sherman Act proscribes contracts, combinations, and conspiracies "in restraint of trade or commerce among the several States." See 15 U.S.C. § 1

[5]    Section 2 makes it illegal to:
      "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the several States ... ." See 15 U.S.C. § 2

goods of like grade and quality, all sales being in interstate commerce, Tex-Shield and the Blucher defendants substantially lessened competition in the relevant market, in violation of Sections 2(a) and (e) of the Robinson-Patman Act. 15 U.S.C. §§ 13(a),(e)[6]. DJM also claims that Creative, knowingly solicited or induced and received favorable discriminatory treatment in violation of Section 2(f) of the Robinson-Patman Act. 15 U.S.C. §

---

[6] Section 2 states:
**(a) Price; selection of customers**
    It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or injure, destroy, or prevent competition ...
**(e) Furnishing services or facilities for processing, handling, etc.**
    It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of commodities bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering of sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.
(Emphasis in Original)

8

13(f)[7]  DJM maintains that the effect of such conduct has been to substantially lessen competition, tending to create a monopoly and destroy competition in the relevant market and has impaired DJM's ability to compete in such line of commerce.  DJM asserts that the defendants' discriminatory conduct has foreclosed competition in the relevant market, in violation of Section 2 of the Robinson-Patman Act.

DJM argues that through concerted conduct in connection with the manufacture, sale and distribution of Saratoga Filter Cloth and chemical protective clothing in the relevant market:

1.  The Blucher defendants and Tex-Shield have used their monopoly power over the Saratoga Filter Cloth and have leveraged and extended their power to control prices and to exclude competitors in the 8(a) business segment;

2.  Competition in the manufacture and sale of chemical protective clothing in the relevant market has been unreasonably restrained;

---

[7]         Section 2 states:
            **(F) Knowingly inducing or receiving discriminatory price**
                    It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
            (Emphasis in Original)

9

3.    DJM has suffered antitrust injury by being rendered unable to purchase, at non-discriminatory prices, a vital, required manufacturing input necessary for it to engage in the manufacture and sale of chemical protective clothing. Unless defendants are enjoined or the requested relief is granted, DJM will be effectively eliminated as a competitor in the relevant line of commerce;

4.    The effect of such conduct will be to substantially lessen competition and tend to create a monopoly in the manufacture and sale of chemical protective clothing in the relevant market.

DJM also claims that both the Blucher defendants and Tex-Shield violated Puerto Rico's antitrust laws[8]. In their view, DJM

---

[8]
These alleged violations of Puerto Rico's antitrust laws more or less parallel the violations of federal antitrust laws set forth in the Amended Complaint. The relevant sections of the Puerto Rico Monopoly Act invoked by DJM are patterned after their federal counterparts. We will, therefore, use federal antitrust case law as a guide in interpreting the Puerto Rico laws, especially given the dearth of Puerto Rico case law on these statutes. Therefore, unless otherwise specified, our analysis and application of federal antitrust case law and statutes to the facts and claims set forth by DJM will be equally applicable to its Puerto Rico Monopoly Act claims. See, e.g, See Coastal Fuels of P.R. v. Caribbean Petroleum, 79 F.3d 182 (1st Cir. 1996).

alleges that the Blucher defendants in combination with Tex Shield

offered and sold the Saratoga Filter Cloth, in a series of sales

outside of Puerto Rico for less than the Cloth was offered and sold

to Plaintiff in Puerto Rico, after making due allowance for (a) the

costs incident to the delivery of goods in Puerto Rico, (b) the

costs of handling such goods in Puerto Rico, and (c) the costs of

the basic cloth.    According to DJM this conduct constituted

unlawful discrimination in price and furnishing of services and

facilities in violation of 10 L.P.R.A. §263.[9]

---

[9]    Section 263 states:

    (a) It shall be unlawful for any person, either
directly or indirectly, to discriminate in price between
different purchasers of commodities of like grade and
quality, where such commodities are sold for use,
consumption, or resale in Puerto Rico, and where the
effect of such discrimination may be substantially to
lessen competition or tend to create a monopoly in any
line of commerce in Puerto Rico or to injure, destroy, or
prevent competition ...
    (b) It shall be unlawful for any person to pay or
contract for the payment, or contribute to the payment of
anything of value to or for the benefit of a customer of
such person as compensation or in consideration for any
services or facilities furnished by or through such
customer in connection with the processing, handling,
sale, or offering for sale of any products or commodities
manufactured, sold, or offered for sale by such person,
unless such payment or consideration is available on
proportionally equal terms to all other customers
competing in the distribution of such products or
commodities in Puerto Rico.

DJM also claims that the Blucher defendants, in combination with Tex-Shield, and others, unlawfully sold and offered to sell Saratoga Filter Cloth in Puerto Rico at prices substantially different from the prices which Tex-Shield quoted and sold these same goods outside of Puerto Rico after making due allowance for differences in costs incident to the delivery and handling of the goods in Puerto Rico, with the purpose of destroying competition and eliminating DJM as a competitor, all in violation of 10 L.P.R.A. § 264.[10]

DJM further alleges that the Blucher defendants in conspiracy with Tex-Shield and Creative, unreasonably restrained trade by selling Saratoga Filter Cloth to Creative and others at a substantially lower price than had it agreed to sell to plaintiff, in violation of 10 L.P.R.A. § 258[11].

---

[10]    Section 264 states:
        It shall be unlawful to sell, contract to sell, offer to sell, or to participate in any step for the sale of articles in Puerto Rico, after making due allowance for differences in costs incident to the delivering of goods in Puerto Rico and the costs of handling such goods in Puerto Rico, at prices which are substantially different from the prices charged or quoted by such sellers for goods of the same grade or quality to buyers located outside Puerto Rico, when such difference is granted with the purpose of destroying competition or eliminating a competitor located in Puerto Rico.

[11]    Section 258 states:
        Every contract, combination in the form of trust or

In response to DJM's claims, defendants argue, in addition to their insufficiency as a matter of law, that all claims under the Air Force contract are barred because DJM has already litigated them and are therefore res judicata. DJM acknowledges that the claims under the Air Force procurement are res judicata by virtue of arbitration proceedings held between DJM and Tex-Shield. Accordingly these claims will be dismissed and the Court will not address them in this opinion. We proceed, therefore, to address the antitrust claims challenged as insufficient by defendants in the same order that they are discussed in the motion to dismiss.

## DISCUSSION

I.    Conspiracy to Restrain Trade and Attempt to Monopolize.

DJM alleges that Tex-Shield in combination with Blucher and Creative, unreasonably restrained trade and commerce by selling Saratoga Filter Cloth at a substantially lesser price than it had offered to sell to DJM in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 and 10 L.P.R.A. § 258, Puerto Rico's equivalent to §1 of the Sherman Act. DJM also alleges that Tex-Shield conspired with Creative to use its monopoly power over its patented Saratoga Filter Cloth to control prices, exclude competitors and gain

---

otherwise, or conspiracy in unreasonable restraint of trade or commerce … is hereby declared illegal …

13

monopoly over the 8(a) market in violation of section 2 of the Sherman Act, 15 U.S.C.§ 2.

i.    **Unlawful Restraint of Trade Claims**

DJM's allegations regarding Blucher's and Tex-Shield's conspiracy in restraint of trade under § 1 of the Sherman Act are without merit. In antitrust parlance, the term conspiracy has been construed as a synonym for agreement. Although nothing in the literal meaning of the Sherman Act excludes coordinated conduct among divisions of a corporation or between a parent corporation and its wholly-owned subsidiary, the Supreme Court has established that coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes the Sherman Act. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984). A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but only by one. Id. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do "agree" to undertake a course of action, there is no sudden joining of economic resources that had previously served different

14

interests, and there is no justification for Sherman Act scrutiny.
Id.  Because the ultimate interests of the subsidiary and the
parent are identical, the parent and the subsidiary must be viewed
as a single economic unit, and, hence, legally incapable of
conspiring with each other for purposes of the Sherman Act.  Here,
given that Tex-Shield is a wholly-owned subsidiary of Blucher, the
Court will address the claims of alleged conspiracy only as they
relate to the concerted conduct, if any, between Tex-Shield and
Creative.

Despite its broad language, almost from its inception the
Sherman Act has been read to prohibit only those restraints of
trade that are unreasonable ("rule of reason").  Board of Trade v.
United States, 246 U.S. 231 (1918).  To state a claim under § 1,
the plaintiffs must allege that 1) each of the defendants entered
into an agreement ("contract, combination ... or conspiracy"), and
2) that agreement was in "restraint of trade or [interstate]
commerce."  See Monahan's Marine Inc. v. Boston Whaler, Inc., 866
F.2d 525, 526 (1st Cir. 1989).  Using the rule of reason approach
the Court finds that, even assuming that Tex-Shield sold its
Saratoga Filter Cloth at a substantially lesser price than it had
previously offered to sell to DJM, these agreements are not in
restraint of trade for Sherman Act purposes.    There is no

15

indication in the complaint that the prices charged by Tex-Shield in these alleged discriminatory sales were predatory. Predatory pricing in simple terms means prices below average costs.    See Barry Wright Corp. v. ITT Grinnell Corp., 724 F.2d 227, 231 (1st Cir. 1983) (defining "predatory" pricing as pricing below seller's costs, and discussing various cost tests; such pricing is predatory because it is a non-sustainable price that can drive competitors from the market and free the seller to raise prices well above competitive levels). It is well established that a dominant firm can lawfully charge a low, non-predatory price. Monahan's Marine, 866 F.2d at 527. As the Court stated in Monahan's, this holding is rooted in the concern that judicial efforts to prevent firms from charging low, non-predatory prices, despite an occasional beneficial result, would more often significantly interfere with the achievement of the Sherman Act's basic and important low price objectives. Id. The Court in Monahan's discussed the differences of price discrimination under the Robinson-Patman Act and the Sherman Act. It explained that even though Plaintiff could have established a violation under the Robinson-Patman Act had it met all the requirements, that fact does not establish a Sherman Act violation. Unlike the Sherman Act, which protects "competition, not competitors," Brown Shoe Co. v. United States, 370 U.S. 294, 320,

(1962), the Robinson-Patman Act extends its protection to competitors. It forbids sellers to "discriminate in price between different purchasers of commodities," where such discrimination tends to "injure, destroy or prevent competition with any person who . . . receives the benefit of such discrimination." The word "with" makes a considerable practical difference. It means that the Act protects those who compete with a favored seller, not just the overall competitive process. Hence, in many circumstances, the Robinson-Patman Act forbids selective but non-predatory price cutting. <u>Monahan's Marine</u>, 866 F.2d at 529.

Like the Court in <u>Monahan's</u>, this Court finds nothing anti-competitive in the simple fact that a seller selectively cuts its prices, or offers other favorable terms, to some of its dealers, even though such conduct may have a competitive adverse impact on the non-favored dealers.  For the foregoing reasons the claims, under section 1 of the Sherman Act and § 258 of the Puerto Rico Monopoly Act and for unlawful restraint of trade must be dismissed.

ii. **<u>Attempt to Monopolize Claim</u>**

DJM's claims under section 2 of the Sherman Act must also be dismissed inasmuch as DJM has failed to meet two indispensable prerequisites applicable to any plaintiff seeking relief for a

violation of § 2 of the Sherman Act: the requirements of pleading antitrust injury and a relevant market. In addition, with respect to its conspiracy to monopolize claims, DJM has also failed to allege specific facts sufficient to aver a conspiracy.

A.    Relevant Market

The Supreme Court has stated that "to establish monopolization or attempt to monopolize a part of trade or commerce under section 2 of the Sherman Act, it would ... be necessary to appraise the exclusionary power of the (defendant's conduct) in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure (defendant's) ability to lessen or destroy competition." Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, (1965).  To establish a claim for the violation of § 2, however, a plaintiff must allege: (1) defendant's possession of monopoly power in a legally relevant market; and (2) the willful acquisition or maintenance of such power. See United States v. Grinnell Corp., 384 U. S. 563, 570-71 (1966).  It is well established, however, that "a patent is an exception to the general rule against monopolies and to the right to access to a free and open market." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U. S. 806, 816 (1945).  Hence, Tex-Shield has "the right to exclude

others from making, using or selling [its] invention throughout the United States." 35 U. S. C. § 154. Tex-Shield, however, cannot use its lawfully acquired monopoly power to foreclose competition in a non-patented relevant market. United States v. Griffith, 334 U. S. 100, 107 (1948). It is, therefore, necessary for the pleadings, as a threshold matter, to sketch a non-patented relevant market. See Gilbuilt Homes, Inc. v. Continental Homes of New England, 667 F.2d 209 (1st Cir. 1981). To assess the potential harm to competition from Tex-Shield's alleged misconduct in violation of § 2 of the Sherman Act the Court must first make an inquiry into the relevant market. See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459 (1993). A relevant market is composed of a relevant product market and a geographic market. Id. Thus, to withstand a motion to dismiss, DJM must allege that Tex-Shield possesses an illegally acquired monopoly power in some relevant geographic and product market.

1. The Relevant Product Market

DJM defines the relevant product market as the small business segment involving manufacture and sale of chemical protective clothing to the United States defense procurement agencies by companies eligible to be suppliers pursuant to the SBA Section 8(a) program. DJM maintains that the United States has restricted the

procurement contracts object of this action to participants of the SBA Section 8(a) program. Therefore, by reason of the statutory regulations and requirements only certified SBA 8(a) participants may take part of the bidding process in contracts set aside for small business and other manufacturers cannot and do not compete for this segment of business. DJM asserts that the SBA Section 8(a) segment of the business of manufacture and sale of chemical protective clothing to the United States Military constitutes a separate line of commerce and relevant market for purposes of this action.

DJM argues that, as a result of patents for Saratoga Filter Cloth, associated know-how, and the preference of the United States Military for chemical protective clothing made from Saratoga Filter Cloth, defendants Blucher and Tex-Shield possess monopoly power in the United States trade and commerce involving the manufacture, sale and distribution of chemical protective cloth for use in chemical protective clothing and equipage. This allegation, however, fails to set forth that Tex-Shield possesses an illegally acquired monopoly power over a non-patented relevant market inasmuch as Tex-Shield has a natural and legal monopoly over its patented product. See United States v. Aluminum Co. of America, 148 F. 2d 416, 423-26 (2d Cir. 1945). Hence, to survive dismissal,

DJM must define relevant product market as the national patented and non-patented chemical protective cloth market.

"In considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than that commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce', monopolization of which may be illegal." See United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956).

DJM, however, fails to allege that the relevant product market is the chemical and biological protective cloth market. To the contrary, DJM intends to narrow the relevant product market to the Saratoga Filter Chemical Protective Cloth brand. In the Amended Complaint there is no mention of other chemical protective cloths in the market that compete with the Saratoga Filter Chemical Protective Cloth, or of other chemical protective cloths that should not be included in the relevant product market, or of other factors that make the Saratoga Filter Chemical Protective Cloth a unique market. See Mathias v. Daily News, L.P., 152 F.Supp.2d 465,481-82 (S.D.N.Y. 2001). See also E.I. du Pont de Nemours & Co., 351 U.S. at 393("[O]ne can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own

product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product.").

Here, DJM only avers that the Saratoga Filter Chemical Protective Cloth is a unique market inasmuch as it is the only brand of chemical protective cloth that the United States Military is willing to purchase. In sum, DJM alleges that Tex-Shield has monopolized the market for patented Tex-Shield chemical protective cloth which have no competitive or generic equivalent or alternate in the chemical protective cloth industry. Thus, DJM has failed to define a relevant product non-patented market inasmuch as Tex-Shield can use its lawfully acquired monopoly power to foreclose competition in the patented Saratoga Filter Chemical Protective Cloth market. See Aluminum Co. of America, 148 F. at 423-26.

2.    The Relevant Geographic Market

DJM also fails to precisely define the relevant geographic market. DJM's only allegation that comes close to defining a geographic market is that Tex-Shield sold the Saratoga Filter Cloth to Creative outside of Puerto Rico, for less than the amount it was sold to DJM in Puerto Rico, and that Tex-Shield's conduct destroyed competition and eliminated DJM as a competitor. DJM's description

of Tex-Shield's operations, however, indicate a national market, for it alleges in its Amended Complaint that Tex-Shield has been designated the sole source by agencies of the United States Department of Defense for the cloth used in the Department's chemical and biological protective garments. DJM's "failure to define a geographic market with precision makes it impossible to assess the potential harm to competition resulting from [Tex-Shield's] alleged misconduct." See <u>Mathias v. Daily News, L.P.</u>, 152 F.Supp.2d 465,483 (S.D.N.Y. 2001). Thus, DJM has failed to plead the two essential components of a relevant market.

B.    <u>Antitrust Injury</u>

A plaintiff seeking to state a claim for violation of section 2 of the Sherman Act must allege that it has suffered an "antitrust injury." See <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 344 (1990). To support its "antitrust injury", DJM avers that preferences were given by Tex-Shield to Creative by giving Creative more favorable credit and price terms; and by allowing Creative use of Tex-Shield's manufacturing facilities. Hence, DJM's allegations of injury amount to one basic proposition--that DJM was injured by Tex-Shield's alleged business venture with Creative. DJM's allegations, however, do not constitute the type of "antitrust

injury" necessary to state a claim for relief under section 2 of the Sherman Act.

To state an "antitrust injury" DJM must demonstrate "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." Capital Imaging v. Mohawk Valley Med. Assoc., 996 F.2d 537, 543 (2d Cir.1993). "The antitrust laws ... were enacted for 'the protection of competition, not competitors.' " Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977).

Taking all well-pleaded facts in the Amended Complaint as true, the Court finds that Plaintiff has not pleaded enough minimal facts to establish an antitrust injury. DJM has alleged no facts on how the preferential price treatment to Creative or the use of joint manufacturing facilities between Creative and Tex-Shield has had an actual adverse effect on competition as a whole in the relevant market. Brunswick Corp., 429 U.S. at 488. DJM's loss of one contract is simply not enough to establish an antitrust injury to competition in the relevant market. In sum, DJM fails to adequately allege that anyone other than itself was injured.

C.    Specific Facts to Aver a Conspiracy

DJM's pleadings on Tex-Shield's involvement with Creative, are also insufficient to establish a conspiracy between Creative and Tex-Shield to monopolize the relevant market. DJM has failed to identify how the conspiracy between Tex-Shield and Creative to manufacture and sell chemical protective clothing in the relevant market was formed, operated or maintained, and what specific overt acts, if any, were performed in furtherance of the conspiracy. See Day v. Fallon Community Health Plan, Inc., 917 F. Supp 72, 78 (D. Mass 1996); Mathias v. Daily News, L.P., 152 F.Supp.2d 465,484 (S.D.N.Y. 2001). True, the Supreme Court has stated that in antitrust cases "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Hospital Building Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976). The Supreme Court, however, has also recognized that, "[i]t is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). See also DM Research v. College of American Pathologists, 170 F.3d 33, 55 (1st Cir.1999)("[B]ald assertions as well as "subjective characterizations" need not be accepted and "[c]onclusory

allegations," standing alone, "are a danger sign that the plaintiff is engaged in a fishing expedition."). The Amended Complaint does not plead sufficient facts to establish a conspiracy or an arrangement to thwart competition in the chemical protective clothing market to sustain a Sherman Act violation. Thus, DJM has not only failed to plead what was the relevant market and the antitrust injury, but has also failed to establish any factual bases for a conspiracy under Section 2 of the Sherman Act. Accordingly, DJM's attempt to monopolize claim must also be dismissed.

II.  **Statute of Limitations defense**.

A.   **Parties' Allegations**

The Blucher defendants argue that since the alleged wrongful actions by the defendants took place on June 22, 1994, DJM should have initiated this action by June 22, 1998 in order for the claims to be timely. Defendants maintain that since the complaint was not filed until September 16, 1998, it is time barred pursuant to the four-year statute of limitations for antitrust actions. Defendants assert that in antitrust law, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business and therefore a plaintiff has to file his claim within four years following the defendant's injurious act.

In its opposition, DJM argues that the limitations period may have been tolled for several months until DJM discovered that Tex-Shield had quoted different prices for the Saratoga Filter Cloth. In support of its contention, DJM suggests that a cause of action does not accrue until a plaintiff has suffered damages as a result of the defendant's actions. Accordingly, it submits that DJM could not have suffered any damages until DPSC awarded the contract to Creative on September 22, 1994, and therefore the complaint filed on September 16, 1998 is timely.

Defendants also argue that, even if plaintiff's argument that the limitations period was tolled for several months were true, the claims would still be barred because of DJM's delay in serving the complaint. Defendants maintain that plaintiff's more than fifteen-month delay in service warrants summary dismissal for failure to prosecute. They argue that Plaintiff's lack of diligence also nullifies the normal operation of Fed.R.Civ.P.3 by which the statute of limitations is tolled upon the filing of the complaint.

DJM opposes the service of complaint argument by stating that the complaint had to be served on Blucher GmbH in Germany under the complicated terms of the Hague Convention. Plaintiff maintains that Fed.R.Civ.P.4 specifically excludes a time limitation for the

service of process in a foreign country, and therefore the 120-day limitation of Rule 4(j) does not apply to the case at bar.

B.     Legal Analysis

15 U.S.C. § 15b states:

>    Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.

The parties in the present case agree that the relevant conduct subject to the complaint took place no later than June 22, 1994. DJM acknowledges that the acts complained of occurred more than four years before it filed the complaint on September 16, 1998. However, DJM seeks to avoid the time bar on two legal theories, namely, (1) that the cause of action in connection with the DPSC procurement accrued on September 22, 1994 (the date DPSC awarded the contract to Creative rather than DJM) and not on June 22, 1994 (the date of Tex-Shield's quotation for the Saratoga Filter Cloth), therefore making the complaint timely; and (2) fraudulent concealment on the part of the Blucher defendants.

An antitrust cause of action accrues and the limitations period commences each time a defendant commits an act that injures the plaintiff's business. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971). The Court in Zenith

pointed out that in the context of a continuing antitrust
conspiracy each time a plaintiff is injured by an act of the
defendants, a cause of action accrues to recover the damages caused
by that act and that, as to those damages, the statute of
limitations runs from the commission of the act. See Service
Mechandise Co., Inc. v. Boyd Corp., 722 F.2d 945, 953 (1st Cir.
1983), citing Zenith Radio Corp., 401 U.S. at 338. For statute of
limitations purposes, the focus is on the timing of the causes of
the injury, i.e., the defendant's overt acts, as opposed to the
effects of the overt acts. Peck v. General Motors Corp., 894 F.2d
844, 849 (6th Cir. 1990). Thus, the overt act of Tex-Shield's
quotation for the Saratoga Filter Chemical Protective Cloth fixed
the date of accrual of the statute of limitations.

DJM also argues a fraudulent concealment on the part of
defendants. To invoke the doctrine of fraudulent concealment, a
plaintiff must plead and (later) prove three elements: (1) wrongful
concealment of the relevant conduct by the defendant; (2) failure
of the plaintiff to discover the operative facts that are the basis
of his cause of action within the limitations period; and (3)
plaintiff's due diligence until discovery of the facts. Berkson v.
Del Monte Corp., 743 F.2d 53, 55 (1st Cir. 1984). The burden rests
squarely on the party pleading fraudulent concealment. Id.

To avoid the bar limitation through invocation of the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct on the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief.  Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.  Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978), cited in Berkson, 743 F.2d at 56. Here, DJM must plead sufficient facts showing that it exercised due diligence in discovering the defendants' alleged price-fixing conspiracy and that it reasonably relied on the defendants' affirmative acts of concealment.  See In re Compact Disc Minimum Advertised Price Antitrust Litigation, 138 F.Supp. 2d 25 (D. Me 2001), citing Berkson, 743 F.2d at 56, and Rutledge 576 F.2d at 250.

The record shows that as early as 1994, DJM had knowledge that Tex-Shield had offered lower, allegedly discriminatory prices, to Creative.  Furthermore, On July 16, 1997, still within the limitations period, DJM initiated Civil No. 97-1457 against Tex-Shield, for the same series of events leading to the complaint filed against the Blucher defendants in Civil No. 98-2065 (both

cases are now consolidated). If DJM wished to bring an action based on its suspicions, it was under a duty to exercise due diligence in investigating whether the suspicions were well founded. See Berkson, 743 F.2d at 56. There is no indication in the record of any efforts by DJM to substantiate its fraudulent concealment claim. Conclusory allegations will not suffice to establish a claim of fraudulent concealment. Without any allegations of due diligence, the plaintiff cannot claim that its claims were fraudulently concealed. Id. at 56.

In light of the foregoing, the Court finds that the statute of limitations expired on June 22, 1998, four years after Tex-Shield's alleged discriminatory quotation. Hence, DJM's claims against the Blucher defendants (Blucher GmbH and Blucher USA) and Creative are time barred under the four-year statute of limitations applicable to antitrust actions. Plaintiff has also failed to successfully assert fraudulent concealment to avoid the limitations bar.

In view of our conclusion on the running of the statute of limitations, we need not address Blucher's argument that the fifteen-month delay by DSM in service warrants dismissal for lack of due diligence. We will now address the remaining claims against Tex-Shield under the Robinson-Patman Act as well as the state law claims based on price discrimination.

III. <u>Price Discrimination</u>

A.   <u>Parties' Allegations</u>

Defendants have moved for dismissal on the grounds that the claim cannot go forward because Plaintiff failed to establish the threshold requirements of (1) two contemporaneous sales, and (2) harm to competition.  Defendants argue that a difference in price between a sale to one person and an offer to another does not constitute "price discrimination" under Robinson-Patman § 2(a) nor under § 263 of the Puerto Rico Antimonopoly Act.  According to the defendants, a sale at one price and a mere offer to sell at another price is insufficient to show a Robinson-Patman violation. Defendants maintain that this is a case in which defendant, Tex-Shield made an offer to DJM and a sale to Creative for the DPSC contract and therefore the two or more sales requirement was not met.

Defendants also argue that DJM failed to establish that the alleged price discrimination tended to harm competition as required under the Robinson-Patman Act and under § 263 of the Puerto Rico Antimonopoly Act.  They argue that the complaint alleges only one instance of Tex-Shield selling chemical protective cloth at lower prices to a competitor, namely, the sale to Creative under the DPSC contract.  Moreover, Defendants maintain that the complaint does

not allege any competitive injury supported by factual allegations. They argue that the complaint is premised on the injury to the plaintiff, not to competition, which is not the type of injury that the antitrust laws are meant to prevent.

In opposition to defendants' motion to dismiss, DJM, argues that paragraphs 22 and 23 of the Amended Complaint in Civil No. 97-1457 and paragraphs 44 and 45 of the Complaint in Civil No. 98-2065, allege a series of discriminatory sales of Saratoga Filter Cloth outside of Puerto Rico at a substantially lesser price than those prices offered and sold in Puerto Rico, during the period of July 1993 through April 1997.  DJM asserts that the difference in price was in the range of $11 to $13 per chemical suit, after making due allowance for differences in costs incident to the delivery of goods in Puerto Rico, the costs of handling such goods in Puerto Rico, and the costs of the basic cloth, coupled with a $2.3 million prepayment.

Defendants further argue that DJM's claim under § 264 of the Puerto Rico Antimopoly Act also fails because no intent to destroy a competitor can be inferred, inasmuch as Tex-Shield was ineligible to compete with DJM for Section 8(a) contracts, and because the prices quoted to DJM and Creative under the DPSC solicitation were not for goods of the same grade or quality.  Defendants argue that

Tex-Shield is a cloth-supplier to manufacturers such as DJM; when Tex-Shield provided DJM with a price quote alleged to be unfairly high, Tex-Shield was not acting with the purpose of eliminating one of its competitors or destroying its competition.

DJM claims that a careful reading of § 264 reveals the statute applies to offers as well as sales (no two-sales requirement), when the purpose is to destroy competition or destroy a competitor. DJM also claims that Tex-Shield and Creative were acting in collusion to eliminate competition in the market of Section 8(a) contracts.

B.  Legal Analysis

In general, Section 2(a) of the Robinson-Patman Act prohibits discrimination in price between purchasers of goods of like grade and quality, where the effect may be to substantially lessen competition or to tend to create a monopoly.

The Puerto Rico price discrimination statute, which is almost identical to Section 2(a) of the Clayton Act, also makes it "unlawful for any person either directly or indirectly to discriminate in price between purchasers ... in Puerto Rico . . ." 10 L.P.R.A. § 263.

To establish a prima facie case of price discrimination under § 2(a), Plaintiff must plead: "(1) two or more contemporaneous sales by the same seller; (2) at different prices; (3) of

34

commodities of similar grade and quality; (4) at least one of the sales was in interstate commerce; (5) price discrimination tended to lessen substantially competition or create a monopoly in any line of commerce; and (6) this price discrimination injured plaintiff." Walpa Constr. Corp. v. Mobile Paint Mfg. Co., 701 F.Supp. 23, 27 (D.P.R. 1988). DJM's complaint fails to allege several of these elements.

In support of its §2(a) claim, DJM points out to a series of discriminatory sales, during the period of July 1993 through April 1997, in which defendants allegedly offered and sold the same Blucher GmbH technology, outside of Puerto Rico, for a substantially lesser price. However, DJM mainly relies on the sales of Saratoga Filter Cloth by Tex-Shield under the Air Force and DPSC procurements to establish the elements of its price discrimination claim.

Although this Court is bound to accept well-pleaded factual allegations as true, it certainly has difficulty in ascertaining the factual bases of the allegations in this case. Day v. Fallon Community Health Plan, Inc., 917 F.Supp. 72, 75 (D. Mass. 1996). Despite references to a series of sales in the complaint, plaintiff offers no insight into the specific nature of the alleged discriminatory sales. Even though DJM pleads that Tex-Shield made

a series of sales to unspecified parties at prices lower than those charged to it, there is no indication within the complaint as to the contemporaneity of the alleged sales or to the overall conditions surrounding them. DJM does not indicate whether the parties involved in the alleged series of sales within this four-year period were competing purchasers or whether they participated in the § 8(a) submarket or whether these sales had any detrimental effect on competition. Since Plaintiff relies mainly on the sales related to the Air Force and DPSC contracts, however, we shall turn to those sales to determine whether they suffice to establish a prima facie case for price discrimination.

Although it is not entirely clear from the consolidated complaints and the motions submitted to the Court, it appears that the procurements involved in this action were separated by almost one year. The Air Force and DPSC solicitations were issued on or about July 1993 and June 1994, respectively.

The motions to dismiss presented to the Court are based on defendants' argument that as a result of the arbitral award denying DJM's claims related to the Air Force contract, they should not to be considered for purposes of DJM's price discrimination claim. Accordingly, defendants insist on the absence of the two contemporaneous sales required by the statute. Defendants mainly

36

rely on <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 568 F.Supp. 205 (E.D.N.C. 1983). In that case the Court decided that at least two sales must take place in order to constitute discrimination and that a sale at one price and a mere offer to sell at another price is insufficient to show a Robinson-Patman Act violation. We are not convinced, however, by defendants' assertion that in the present case there was only one sale and a mere offer to sell. DJM clearly points to the existence of two completed transactions. The sale to DJM regarding the Air Force contract, even though determined not to be discriminatory by the arbitral award, could be considered as a completed transaction for purposes of future sales such as the one made to Creative regarding the DPSC contract. As the Supreme Court has stated, "no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination. Thus, a contract may be made today which has no legal defect under the Robinson-Patman Act. A week later, another sale may be made at a different price or at a different discount, and the latter taken into consideration with the former may establish a discrimination. … It is plain that the violation, if there was one, is not inherent to the contract sued upon…" <u>Bruce's Juices v. American Can Co.</u>, 330 U.S. 743, 755 (1947).

The mere existence of two completed sales at different prices, however, will not by itself establish a Robinson-Patman violation. In order to prevail on its Robinson-Patman Act claim, plaintiff must demonstrate the existence of two completed comparable sales. Since discrimination can arise only from pricing disparities in reasonable comparable transactions under similar circumstances, the prohibition of the statute will not be triggered if the pertinent sales are too far apart.    F.Rowe, _Price Discrimination Under the Robinson-Patman Act_, § 4.2, p. 48, _citing_ _Chicago Sugar Co. v. American Sugar Refining Co._, 176 F.2d 1, 8 (7th Cir. 1949).  Also, the evil at which the Robinson-Patman Act is aimed is discrimination between different competing purchasers, where the effect of such discrimination may be substantially to lessen competition or to tend toward a monopoly in commerce.  For that evil to exist there must be, of course, at least two different competing purchasers. Here, the sales to DJM and Creative occurred almost a year from each other and, furthermore, as admitted by DJM, Creative was not a competitor of DJM during that time period because it had not obtained its § 8(a) certification and therefore could not compete in the bidding for the Air Force procurement.

Even though DJM points to two completed sales, these were not the "comparable transactions under similar circumstances" required

by the statute to constitute a Robinson-Patman violation.  In light of the foregoing the claims under § 2 of the Clayton Act as amended by the Robinson-Patman Act and § 263 of the Puerto Rico Antimonopoly Act must be dismissed.

DJM makes separate allegations of unlawful price discrimination under 10 L.P.R.A. § 264, claiming that defendants sold, offered to sell and participated in steps for the sale of Saratoga Filter Cloth outside Puerto Rico at prices substantially different from the prices offered in Puerto Rico, with the purpose of destroying competition or eliminating a competitor.

Even though DJM construes this statute as a price discrimination provision, it is really meant to be a state anti-dumping provision, similar to the Federal Anti-Dumping Act of 1916, prohibiting the sale of articles in Puerto Rico at prices that are less than their market value in their domestic market, with the purpose of injuring or destroying competition in Puerto Rico. Arturo Estrella, Antitrust Law in Puerto Rico. 28 Rev. Col. Abog. 505, 624-626 (1968).  The phrase "substantially different" in relation to price was used with the intention of

outlawing lower prices.   Id., quoting Diario de Sesiones, Vol. XVIII, at 1708.[12]

The Anti-Dumping Act of 1916[13], part of the Revenue Act of the same year, is directed at sales  of articles imported into the United States and sold at a substantially lesser price than the market value of such articles at the time of exportation in the principal markets of the country of production.   United States v. Cooper Corp., 312 U.S. 600, 609 (1941).   Dumping has been defined as the selling of a product below either (a) the cost of production and delivery; or (b) the price for which a foreign product is sold in its own domestic market.   Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co., 26 F.Supp.2d 1022, 1023 (S.D. Ohio 1998) .

Here, DJM makes no allegation regarding the sale of Saratoga Filter Cloth at prices substantially lower that those offered in the United States.   DJM simply urges a construction of the statute as one of price discrimination.   We are not convinced by DJM's argument.   It is clear that § 264 of the Puerto Rico Antimonopoly

---

[12]

The Senate Report states :
    This provision punishes dumping (flooding the market with merchandise from outside at prices substantially lower that the market price) with the purpose of destroying competition or eliminating a competitor in Puerto Rico.

[13]

15 U.S.C. § 72.

Act addresses the practice of flooding the Puerto Rican market with merchandise from foreign markets by offering such products at prices substantially lower that those offered in the products' domestic market, with the purpose of destroying competition or eliminating a competitor. There are no allegations to that effect in DSM's Complaint. Accordingly, the claim for price discrimination under 10 L.P.R.A. § 264 must also be dismissed.

IV.  Bid Rigging

A.   Parties' allegations

Finally, defendants argue that under the theory of bid rigging set forth in the complaint, DJM has failed to state a cause under federal antitrust law. Defendants maintain that DJM's bid rigging claim is not supported by any antitrust legislation or case law. To the contrary they contend that bid rigging under the statute requires a horizontal agreement (between competitors) designed to permit competitors to share contracts and fix prices.

Defendants maintain that Creative, the alleged partner in the bid-rigging scheme, is a customer and not a competitor of Tex-Shield. Accordingly, defendants assert that because Tex-Shield and Creative did not bid against each other, DJM's bid rigging claim is a hollow accusation having no legal support. Defendants also assert that DJM's allegation that Tex-Shield conspired with Blucher

41

to engage in bid rigging fails to state a claim because Tex-Shield is Blucher's wholly-owned subsidiary.

B.    Legal Analysis

 Plaintiff has advanced a claim for bid rigging alleging that Tex-Shield combined with Creative to rig the bidding process in § 8(a) procurement contracts.    Bid rigging is one of the antitrust violations that "because of its pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5 (1958). United States v. Mobile Materials, Inc., 881 F.2d 866, 869 (10th Cir. 1989), cert. denied, 493 U.S. 1043 (1990). See U.S. v. Reicher, 983 F.2d 168, 170 (10th Cir. 1992).

 Bid rigging is a very specific type of horizontal violation of section 1 of the Sherman Act defined as: "Any agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party... ." See United States v. Portsmouth Paving Corp., 694 F.2d 312, 325 (4th Cir. 1982)). See also United States v. David E. Thompson, Inc., 621 F.2d 1147, 1149-50 (1st Cir.1980).

42

Bid-rigging in violation of § 1 contemplates only agreements between actual or potential competitors. <u>United States v. Portsmouth Paving Corp.</u>, 694 F.2d 312, 325 (4th Cir. 1982); <u>United States v. W.F. Brinkley & Son Constr. Co.</u>, 783 F.2d 1157, 1160 (4th Cir. 1986); <u>United States v. Ashland-Warren</u>, 537 F. Supp. 433, 445 (M.D. Tenn. 1982) (finding that bid-rigging schemes are useless unless the offending group consists of competitors) (criminal prosecution). Stated another way, "courts have only deemed bid rigging a <u>per</u> <u>se</u> violation where the agreements have been horizontal." <u>MHB Distributors, Inc. v. Parker Hannifin Corp.</u>, 800 F. Supp. 1265, 1268 (E.D.Pa. 1992); <u>Advanced Power Systems v. Hi-Tech Systems</u>, 801 F. Supp. 1450, 1463 (E.D.Pa. 1992); <u>see Business Electronics v. Sharp Electronics</u>, 485 U.S. 717, 730, 99 L. Ed. 2d 808, 108 S. Ct. 1515 (1988) (finding that competitor-imposed restraints are horizontal, while restraints imposed by agreement between firms at different levels of distribution are vertical). See <u>Zachair, Ltd. v. Driggs</u>, 965 F.Supp. 741, 747 (D. Md. 1997).

Here, Plaintiff has failed to establish any facts that would tend to show directly or support the inference that Tex-Shield is an actual or potential competitor of DJM in the relevant market. The record clearly shows that Creative is a Customer of Tex-Shield and neither Creative nor Tex-Shield bid against each other for §

8(a) procurement contracts.  There is no evidence of a horizontal relationship between these two entities.  In view of our finding that there is no horizontal relationship between Creative and Tex-Shield, the Court concludes that there could be no bid rigging agreements of the type prohibited by the Sherman Act.  Accordingly the claims for bid rigging must be dismissed.

### CONCLUSION

For the foregoing reasons Defendants' Motions to Dismiss (Docket No. 77 and 96) are **GRANTED**.  DJM's Motion for Entry of Partial Summary Judgment (Docket Nos. 104, 108 and 115) is now **MOOT**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of June, 2002.

JAY A. GARCIA-GREGORY
United States District Judge